## J. S. WHITE v. THE STATE.

### No. 2955. Decided March 9, 1904.

**1.—Charge of the Court—Sacramental Purposes—Local Option.**

A charge that the sale of wines for sacramental purposes within local option territory would not be a violation of the law, and that if defendant made such sale in good faith, believing at the time that the wine was for sacramental purposes, or in case the jury had a reasonable doubt as to this fact they should find him not guilty, even though they might believe that said wine was purchased or used for some other purpose, was sufficient, without further entering upon a more extended explanation as to what constituted good faith, which would have been a charge on the weight of the testimony, or at least but argumentative.

**2.—Local Option—Previous Sales—Subterfuge.**

If appellant sold wine on certificates of the purchaser that the same was to be used for sacramental purposes, and was pursuing this system of selling his wine to evade the local option law, then his honesty of purpose became the test and extraneous sales could be introduced in evidence to expose such subterfuge. Following the rule in Nixon v. State, 31 Texas Crim. Rep., 205; Long v. State, 39 Texas Crim. Rep., 537.

Appeal from the County Court of Parker. Tried below before Hon. D. M. Alexander.

Appeal from a conviction of violating the local option law; penalty, a fine of $25 and confinement in the county jail for twenty days.

The opinion states the case.

R. B. Hood and Sam Shadle, for appellant.

Howard Martin, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment is in the ordinary form, charging a violation of the local option law. The evidence shows it was a sale of a gallon and a pint of wine. The purchaser was a boy 20 years of age. He says: "I went up to defendant's house, about night one Saturday. Defendant was making a coffin. I told defendant I wanted to buy some wine. He said he had some but could only sell it for sacramental purposes. I told him that was what I wanted with it. He told me then I would have to sign a certificate to that effect. I said that I would. He went in the cellar, and I signed the certificate, and got the wine, and I paid him the money for it." He further testified that defendant did not inquire as to his age; did not ask if he was a member of the church or minister of the gospel. In fact made no inquiry. Defendant did not say anything except he could only sell the wine for sacramental purposes. The witness signed the certificate that the wine was for sacramental purposes. The certificate is as follows:

"Certificate for Sacramental Wine.—This is to certify that I, the undersigned, have this day bought from J. S. White of Parker County, Texas, one gallon of his wine to be used by me or my church for sacramental purposes only, and the undersigned further states that I am 21 years old, or older. This statement is made in order to get said sacra-

mental wine, as I am well aware that no one could obtain wine from said White in any prohibition county or precinct for any other purpose. Witness my hand and seal, Peaster, Parker County, Texas, on this the 21, Feb. 1903.    (Signed)    Tom Cooper."

Defendant testified in his own behalf that he was a farmer, grew grapes, and made a little wine each year; that he had known prosecuting witness, Tom Cooper, three or four years, but not intimately.    His testimony is in substance the same as the witness Cooper.    In regard to his intent he says:    "I sold Tom Cooper that wine in good faith, believing he wanted it for the purposes he represented to me.    I relied on his statements about the matter and had no reason for doubting them.    I do not belong to the church, and know nothing about how much wine is used for sacramental purposes."    He testified that he sold three gallons of wine to John Burns some time in December, for sacramental purposes; that he sold Bailey a gallon of wine some time last fall; don't remember the date.    This was also for sacramental purposes.    He sold Wilson a gallon of wine Christmas day, on Wilson's representation that he wanted it for sacramental purposes.    All these parties signed certificates that they were obtaining the wine for sacramental purposes.    The sales to Wilson, Bailey and Burns were made at different times and were different transactions from the one under investigation.    This is in substance the case.

In regard to the intent of defendant in making the sale to Cooper, the court charged the jury "that the sale of wines for sacramental purposes within Parker County would not be a violation of the law, and if you believe from the evidence that defendant, J. S. White, sold the witness Tom Cooper intoxicating liquor as alleged, but you further believe from the evidence that the liquor so sold was wine, sold for sacramental purposes; or if you have a reasonable doubt of this, then you will find defendant not guilty.    Upon the question as to whether or not the sale, if any, was made for sacramental purposes, you are instructed that if defendant made said sale in good faith, believing at the time that it was for sacramental purposes, or if you have a reasonable doubt as to this, you will find defendant not guilty, even though you may believe that said wine was purchased or used for some other purpose."    The evidence of the other sales to Wilson, Bailey and Burns, about which appellant testified, were properly limited in the court's charge.    Appellant asked a charge in this connection which was practically the same as that given by the court, except the following:    "And that said defendant, seller herein, relied upon said representations and made the sale in good faith and in an honest endeavor to obey the law, then and in that event you can not convict defendant, although you may believe that said defendant entered into no extended investigation of the purpose of the purchaser; and although the purchaser was a mere stranger to defendant; and if you have a reasonable doubt as to the above, you will acquit the defendant."    This is practically an excerpt from the decision by

the Supreme Court of Michigan in People v. Hinchman, 4 L. R. A., 707. The court reversed that case upon a charge given by the trial court, which they held placed defendant under restrictions not required by the statute in that State, and went beyond the terms and requirements of the law or the facts. The court, in commenting upon this charge, used practically the language set out in the instruction requested by appellant here, and which was refused. We believe the charge as given by the court was sufficient; and the requested charge would have been a charge upon the weight of the testimony; at least it was more of an argument than a charge. If appellant believed at the time he sold the wine to Cooper that Cooper was buying it for sacramental purposes, he would be protected. If he did not so believe, and the wine was sold and the certificate required as an evasion of the law, he would not be protected. We are of opinion the charges given sufficiently covered the phase of the testimony which bore upon the intent of appellant.

Nor was there any error in admitting the testimony in regard to the previous sales. In Walker v. State, 6 Texas Ct. Rep., 938, the matter of extraneous sales was under discussion, as it was in Walker v. State, and Grimes v. State, 7 Texas Ct. Rep., 8. In the first case cited, this language was used: "Wherever the facts testified in regard to the case on trial are plain and certain, extraneous matter can not be introduced under the rule in regard to system, developing the res gestae, or proving the intent. Johnson's case, 2 Texas Ct. Rep., 412; Long v. State, 39 Texas Crim. Rep. 537; Nixon v. State, 31 Texas Crim. Rep., 205. In these character of cases the objection to the testimony should be sustained, unless under the peculiar facts of the case on trial it is brought within the rule laid down in Long and Nixon cases, supra." The mere ract of making the one sale of wine for sacramental purposes to Cooper, standing alone, perhaps would have suggested an acquittal; but if appellant was pursuing this system of selling his wine, as an evasion of the law, then he was not protected. His honesty of purpose and good faith was the test, and the evidence which was introduced showing he persistently sold large quantities of wine for sacramental purposes, had a strong tendency to indicate his bad faith. His honesty of purpose, or his mistake of fact would redound to his favor; but if neither of these had an existence in appellant's mind, he could not justify himself by the mere statement, under the peculiar circumstances of this case, that the wine was sold for sacramental purposes. He was placed upon notice, and a mistake of fact required that he use reasonable caution and that the mistake arose from no ordinary care on his part. At least, where the question of honesty of purpose or mistake of fact becomes an issue, the evidence which bears upon this is introduceable. If it was appellant's system or manner of selling his wine, as an evasion of the local option law, he would not be protected under this character of subterfuge. We are therefore of opinion that the court did not err in permitting the evidence of extraneous sales. What is here said in regard to the ad-

mission of this character of testimony is in harmony with the well settled rule and in no manner conflicts with the decisions relied upon by appellant.

· The judgment is affirmed.

*Affirmed.*